**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| JOHNNY NEALY, #279082, )<br>) CIVIL ACTION NO. 3:08-871-GRA-JRM<br>Petitioner, )<br>)<br>v.  )  **REPORT AND RECOMMENDATION**<br>)<br>WARDEN LIEBER )<br>CORRECTIONAL INSTITUTION, )<br>)<br>Respondent. )<br>_____) | |

Petitioner, Johnny Nealy ("Nealy"), is an inmate at the South Carolina Department of Corrections serving a sentence of two (2) terms of life imprisonment for two (2) counts of murder, ten (10) years for first degree lynching and five (5) years for possession of a knife during a crime of violence and criminal conspiracy. He filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that he is in custody in violation of the Constitution of the United States. The case was automatically referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02 (B)(2)(c), DSC. Respondent filed a motion for summary judgment, supported by copies of portions of the state court record, on May 12, 2008. Because Petitioner is proceeding pro se, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued on May 16, 2008, advising Petitioner of his responsibility to properly respond to the motion for summary judgment. Petitioner filed his response to Respondent's motion for summary judgment on June 4, 2008.

**Back Ground and Procedural History**

Connie Neal Brown, Nealy's sister, had difficulties with her husband, Billy Ray Brown.

1

Nealy conspired with Connie Neal Brown, another sister, Renee Nealy Young, their mother, Melba Nealy, and her boyfriend, Godis Washington to murder Billy Ray Brown. On the night of June 21, 2000, Nealy, Renee Nealy Young, Melba Nealy and Godis Washington went to the marital home of Billy Ray Brown and Connie Nealy Brown in Horry County and knocked on the door. They were greeted by Connie Nealy Brown who, according to their plan, called Billy Ray Brown to come to the door. He did, and Nealy and Godis Washington stabbed Billy Ray Brown and beat him with a club. They also murdered Ronnie McDowell, a friend visiting Billy Ray Brown. (App. 8-19).

Nealy pled guilty as charged on October 16, 2001. He was represented by Robert Sutton, Esquire. Nealy filed a direct appeal by way of an Anders[1] brief filed by the south Carolina Office of Appellate Defense raising the following issue:

> Whether appellant's guilty plea should be vacated as involuntary because it did not comply with the due process mandates of *Boykin v. Alabama*?

The record does not contain a *pro se* brief filed by Nealy. The conviction was affirmed on may 7, 2003 by the South Carolina Court of Appeals. State v. Nealy, 03-UP-320 (S.C.Ct.App., May 7, 2003). The Remittitur was returned on June 10, 2003.

Nealy filed an application for post-conviction relief ("PCR") on September 25, 2003. An evidentiary hearing was held on July 27, 2005. Nealy was represented by Scott Joye (App. 68). The PCR court issued an "Order of Dismissal and Order Modifying Sentences" on August 19, 2005. (App. 107).[2]

---

[1] Anders v. California, 386 U.S. 738 (1967).

[2] The order required the sentences for lynching and conspiracy to run concurrently.

A <u>Johnson</u>[3] petition for writ of certiorari was filed by the South Carolina Office of Appellate Defense raising the following issue:

> Trial counsel was ineffective in failing to explain fully sentencing consequences in the case.

(Res.Mem., Ex. 5).

Nealy did not file a *pro se* petition. The petition for writ of certiorari was denied by the South Carolina Court of Appeals on August 31, 2007. (Res.Mem., Ex. 6). The Remittitur was returned on September 18, 2007. (Res.Mem., Ex. 7).

## **Grounds for Relief**

In his present petition Nealy asserts that he is entitled to a writ of habeas corpus on the following grounds:

> **GROUND ONE:** Violation of *Boykin v. Alabama*
>
> **SUPPORTING FACTS:** Appellant Guilty Plea should be vacated as involuntary because it did not comply with the due process mandates of *Boykin v. Alabama.*
>
> **GROUND TWO**: Ineffective Assistance of Counsel
>
> **SUPPORTING FACTS**: Trial Counsel was ineffective for failing to withdraw guilty plea when the State reneged on plea bargain. Trial Counsel was ineffective for failing to object to the continuation of guilty plea proceeding once the Solicitor reneged on plea bargain agreement.

## **Discussion**

### A. Involuntary Guilty Plea.

Nealy asserts that his guilty plea was involuntary because it did not comply with the Supreme Court's holding in <u>Boykin v. Alabama</u>. Respondent attacks this claim by two arguments. First,

---

[3]<u>Johnson v. State</u>, 294 S.C. 310, 364 S.E.2d 201 (S.C. 1988).

Respondent asserts that claim was not properly presented to the South Carolina appellate courts for review, and it is, therefore, procedurally barred. Alternatively, Respondent argues that the claim fails even if considered on the merits.

**1. Procedural Bar.**

Generally, a state prisoner must exhaust his constitutional claims in state court before seeking federal habeas relief. 28 U.S.C. § 2254(b). If the state prisoner fails to present a claim or if state procedural rules bar its courts from considering a claim, that claim is procedurally defaulted and will not be considered on federal habeas review in most circumstances. Fisher v. Angelone, 163 F.3d 835, 844 (4th Cir. 1998). In summary, procedural default prohibits federal review when (1) the prisoner fails to comply with a state procedural rule during state proceedings, and (2) the failure provides an adequate and independent ground for the states denial of relief; and (3) the state court expressly relied on the procedural default in denying relief. Coleman v. Thompson, 501 U.S. 722, 729-30 (1991).

In the present case, Respondent argues that the South Carolina Court of Appeals did not consider the merits of Nealy's direct appeal (involuntary guilty plea based on Boykin v. Alabama) but instead applied a procedural bar to the claim because Nealy failed to raise a contemporaneous objection during the guilty plea. South Carolina has a contemporaneous objection rule. *See* Pike v. South Carolina Department of Transportation, 332 S.C. 605, 506 S.E.2d 516, 521 (1998) ("For an issue to be preserved for appeal, it must have been raised to and ruled upon by the trial court."). It is clear that Nealy did not raise a contemporaneous objection in the trial court and that such a failure may provide an independent and adequate basis for state procedural default. Furr v. State of South Carolina, 2002 WL 31996016 (D.S.C.)

4

The issue is whether the South Carolina court clearly and expressly found that the claim was defaulted. "(T)he mere fact that a federal claimant failed to abide by a state procedural rule does not, in and of itself, prevent this Court from reaching the federal claim: The state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." Harris v. Reed, 489 U.S. 255, 261-262 (1989). In making this determination a federal court should examine the text of the state court opinion and the circumstances surrounding the state court's order. Wilson v. Moore, 178 F.3d 266, 273-274 (4th Cir. 1999).

The Anders brief squarely presented the issue to the South Carolina Court of Appeals. According to the brief the trial court first advised Nealy that he would be sentenced to life imprisonment without parole but "the judge later offered hope of a lesser sentence." (Res.Mem., Ex. 2, p. 5). Based on this alleged ambiguity, Nealy argued that he was misadvised about the maximum penalty he could receive. The record does not contain a responsive brief from the State. The South Carolina Court of Appeals summarily dismissed the appeal, stating

> **PER CURIAM:** Johnny Andrew Nealy appeals from his guilty plea to tow counts of murder, first-degree lynching, criminal conspiracy, and possession of a knife during a violent crime. Nealy argues the plea did not comply with the due process mandates of Boykin v. Alabama, 395 U.S. 238 (1965). After a thorough review of the record and counsel's brief pursuant to Anders v. California, 386 U.S. 738 (1967), and State v. Williams, 305 S.C. 116, 406 S.E.2d 357 (1991), we dismiss Nealy's appeal and grant counsel's motion to be relieved. (footnote omitted).

The court did not explicitly state that it was dismissing the appeal due to a procedural bar based on the contemporaneous objection rule. The court mentioned Boykin v. Alabama only with respect to stating the issue raised in the Anders brief. The only other authority cited was Anders, State v. Williams, which established a procedure for implementing Anders, and Rule 215 SCACR,

5

which provides that a South Carolina appellate court may decide a case "without oral argument if it determines that oral argument would not aid the court in resolving the issues."

The fact that the Court of Appeals cited Boykin v. Alabama favors a conclusion that the court relied on federal law in dismissing the appeal.[4] Further the court indicated that it made "a thorough review of the record and counsel's brief" before dismissing the appeal. This further favors a conclusion that the court applied the principles of Boykin v. Alabama.

Since the opinion of the South Carolina Court of Appeals and the circumstances of the decision favor a conclusion that its decision was based on federal law, the undersigned concludes that Nealy's claim is not procedurally barred.

**2. Boykin v. Alabama.**

A guilty plea to be valid must be the informed, voluntary decision of a competent defendant who has the opportunity to receive the advice of a reasonably competent attorney. A defendant must be informed of the charges against him and the protections afforded by the United States Constitution. Boykin v. Alabama, 395 U.S. 238 (1969) and Henderson v. Morgan, 426 U.S. 637 (1976). The defendant must be informed of the direct consequences of his plea such as the maximum sentence and any applicable mandatory minimum sentence. A guilty plea must be "a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970).

Nealy gives no clear indication in his petition or his opposition memorandum as to why his guilty plea was involuntary. In any event the claim is limited to the arguments made in his Anders

---

[4]In Riley v. South Carolina, 82 F.Supp.2d 747, 484 (D.S.C. 2000), the court concluded that the state court's failure to mention two issues in its opinion favored a finding that the state court relied on a state procedural bar.

6

brief, i.e., he was misadvised by the court as to the maximum penalty for murder.

Under South Carolina law the punishment for murder in non-capital cases is a mandatory minimum term of imprisonment of thirty (30) years and a maximum of life. *See* S.C.Code Ann. § 16-3-20. The trial court correctly and clearly advised Nealy of the punishment range ("(W)ith regard to these murders, the penalty is either thirty years or life imprisonment [both] without the possibility of parole."). (App., p. 25). The court then clearly indicated that based on the facts of the cases it intended to impose life sentences for the murders. (App., p. 26). In response to defense counsel's arguments with respect to mitigation and mercy the court indicated a sentence of less than life imprisonment was possible but unlikely. (App., p. 35). After the facts of the case were placed on the record the court stated that "(t)he facts, if proven, clearly support a capital murder case" and asked rhetorically, given the facts, "what would keep me from imposing less than life imprisonment?" (App., p. 42).

In summary, the trial court correctly advised Nealy of the sentencing range and consistently indicated to him that it was the court's intention to impose life sentences for the murders. No violation of Boykin v. Alabama is present in this record.

**B. Ineffective Assistance of Counsel.**

Nealy asserts that the State violated a plea agreement it had with him during the change of plea hearing and that his attorney was ineffective in failing to object and going forward with the guilty plea after the breach. Respondent appears to concede that this claim was properly exhausted because it was alluded to in the Johnson petition. (Res.Mem., pp. 6-7).

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771

7

n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added).

Strickland at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of

the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the Strickland test. See Williams v. Taylor, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

Ineffective assistance of counsel claims may be asserted in limited circumstances where the petitioner has entered a plea of guilty. A guilty plea generally precludes the petitioner from challenging defects in the process which occurred prior to the plea. He "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann." Tollett v. Henderson, 411 U.S. 258, 267 (1973). When such a claim is raised, the voluntariness issue is subsumed within the claim of effectiveness of the attorney's assistance. Hill v. Lockhart, 474 U.S. 52, 56 (1985).

A criminal defendant must be informed of the direct consequences of his plea. Misinformation as to the direct consequences of a plea renders the plea involuntary. Manley v. U.S., 588 F.2d 79 (4th Cir. 1978) (erroneous statement of court as to maximum possible punishment). Neither the court nor defense counsel is obligated to advise a defendant as to the collateral consequences of a plea. Strader v. Garrison, 611 F.2d 61 (4th Cir. 1979) (parole eligibility is a collateral consequence of a plea). "The distinction between 'direct' and 'collateral' consequences of a plea...turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." Cuthrell v. Director, Patuxent Institution, 475 F.2d 1364, 1366 (4th Cir. 1973).

On August 2, 2001, Nealy executed a written plea agreement[5] which would have allowed him, based on his "complete and truthful testimony" regarding his co-defendants, to plead guilty to the two murder counts with a recommendation of concurrent sentences. The other charges would be dismissed and Nealy would have been allowed to plead guilty before a specific judge. Sentencing was to be delayed until after his testimony. At the plea hearing the Solicitor told the court that there were no plea negotiations, but "because the crimes all occurred at the same time, the State would recommend that any sentence run concurrent. (App., p. 2). At the PCR hearing Nealy testified that he cooperated with the State, but the State did not call for his testimony. (App., p. 80). However, Nealy's trial counsel testified that Nealy initially cooperated, but prior to trial of his co-defendants he changed his mind and decided to end his cooperation and refuse to testify against his relatives. This decision, related to the State, cancelled the written plea agreement. (App., p. 91). Additionally, Nealy attests that his attorney promised him a sentence of thirty (30) years if he pled guilty (App., p. 81). Counsel denied this promise and testified the plea was "straight up". (App., pp. 93-94).

The PCR court reviewed the conflicting testimony and found testimony of Nealy's attorney to be credible. The court found as fact that Nealy was not promised a particular sentence. In essence, the PCR court found that it was Nealy and not the State or his attorney who breached the written plea agreement. This being the case, trial counsel could not have been ineffective in failing to object during the plea hearing.

The undersigned concludes that the state courts properly applied Strickland v. Washington and Hill v. Lockhart to this claim.

---

[5]The plea agreement is mentioned in the PCR transcript. A copy is attached to Nealy's opposition memorandum.

10

**Conclusion**

Based on a review of the record, it is recommended that Respondent's motion for summary judgment be **granted** and the petition **dismissed**, without an evidentiary hearing.

The parties are referred to the Notice Page attached hereto.

Joseph R. McCrorey
United States Magistrate Judge

October 3, 2008
Columbia, South Carolina

11

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).